378 So.2d 414 (1979)
STATE of Louisiana
v.
Melvin DOUSAY.
No. 65056.
Supreme Court of Louisiana.
December 13, 1979.
*415 D. Michael Mooney, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard K. Knapp, Jr., Dist. Atty., for plaintiff-appellee.
DIXON, Justice.[*]
The assistant district attorney of the Fourteenth Judicial District filed a bill of information which charged that on July 21, 1978 Melvin Dousay "did unlawfully violate the sanitary code by failing to take all usual and reasonable measures and precautions to secure and ensure the proper operation and maintenance fo (sic) a sewage treatment plant or sewage disposal system, in violation of the sanitary code of the state of Louisiana, section 10:22." Dousay filed a motion to quash, alleging that § 10:22 of the sanitary code was unconstitutional by virtue of its failure adequately to define and limit a prescribed criminal activity. After a hearing on the motion, the trial court found that the language of the regulation at issue was unconstitutionally vague and overbroad.[1] The state has appealed this ruling under Article 5, § 5 of the Louisiana Constitution of 1974, which provides that a case shall be appealable to this court if a law or ordinance has been declared unconstitutional.
Section 10:22 of the sanitary code, under which prosecution was instituted against defendant, provides:
"It shall be the duty of every person or officer having any authority over and control of the maintenance or operation of any sewage treatment plant or sewage disposal system to take all usual and all reasonable measures and precautions to secure and ensure the proper operation and maintenance of the sewage treatment plant or sewage disposal system."
Under R.S. 40:6, violation of this regulation is punishable by a fine of not more than $25.00 and/or imprisonment for not more than ten days, for the first offense.[2]
*416 The constitutional requirement of definiteness which must be satisfied by a regulation which is accompanied by penal sanctions emanates from the due process clauses of the United States and Louisiana Constitutions, from Article 1, § 13 of the Louisiana Constitution, Rights of the Accused, which contains the guarantee that "[i]n a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him," and from Article 1, § 16 of the Louisiana Constitution, Right to a Fair Trial.
Two fundamental concepts are embodied in the principle that the vagueness of a criminal enactment may render it unconstitutional. The first of these is that individuals must be given adequate notice that certain contemplated conduct is proscribed and punishable by law. The second is that adequate standards must be provided for those charged with determining the guilt or innocence of an accused. See Schopler, Annotation, Indefiniteness of Language as Affecting Validity of Criminal Legislation or Judicial Definitions of Common-Law Crime Supreme Court Cases, 16 L.Ed.2d 1231 (1966); Comment, Reconciliation of Conflicting Void-for-Vagueness Theories Applied by the Supreme Court, 9 Houston L.R. 82 (1971).
With regard to the requirement of adequate notice, this court has held that the constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that a penal statute must describe unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. State v. Payton, 361 So.2d 866 (La.1978); Connick v. Lucky Pierre's, 331 So.2d 431 (La.1976); State v. Lindsey, 310 So.2d 89 (La.1975). The due process clause of the Louisiana Constitution has also been found to demand that words and phrases employed in statutes or regulations may not be so vague and indefinite that any penalty prescribed for their violation constitutes the taking of liberty or property without due process of law. Connick v. Lucky Pierre's, supra; State v. Lindsey, supra. Similarly, a conviction under a criminal enactment which does not give adequate notice that the conduct charged is prohibited is violative of the due process clause of the Fourteenth Amendment of the United States Constitution. Palmer v. City of Euclid, 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971); Wright v. Georgia, 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963).
Both the constitutional guarantees of procedural due process and the right to a *417 fair trial embodied in Article 1, § 16 of the Louisiana Constitution also require that a criminal enactment contain an ascertainable standard of guilt and that it "mark[s] boundaries sufficiently distinct for judges and juries to administer the law in accordance with the legislative will." City of Baton Rouge v. Norman, 290 So.2d 865, 868 (La.1974). The United States Supreme Court has held that "[a] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it... leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." Giaccio v. Pennsylvania, 382 U.S. 399, 403, 86 S.Ct. 518, 520-521, 15 L.Ed.2d 447, 450 (1965).
The constitutional requirement of definiteness is satisfied when the language of a criminal enactment "has a generally accepted meaning such that a person of ordinary intelligence would be given fair notice of what conduct is forbidden," State v. Defrances, 351 So.2d 133, 135 (La.1977), or when "the crucial words [or] phrases in the criminal statute have a fixed and definite meaning for a person of ordinary intelligence." State v. Cloud, 248 La. 125, 130, 176 So.2d 620, 622 (1965). When, as here, administrative regulations are accompanied by criminal sanctions, the United States Supreme Court has stated that "businessmen must not be left to guess the meaning of regulations." United States v. Mersky, 361 U.S. 431, 441, 80 S.Ct. 459, 465, 4 L.Ed.2d 423, 431 (1960).
The words which are critical to the determination we make here are "usual," "reasonable," and "proper." In State v. Defrances, supra, we found that the phrase "any immoral sexual purpose" was unconstitutionally vague because it did not have a meaning which was generally accepted by the population as a whole; see also State v. Truby, 211 La. 178, 29 So.2d 758 (1947). In State v. Payton, supra, we made the same determination with regard to the phrase "an especially heinous, atrocious or cruel manner." In Connick v. Lucky Pierre's, supra, we found that it would be impossible for a reasonably intelligent person, confronted with a statute requiring him to take "the legal action necessary to enjoin" certain activities, to know the extent or scope of the obligation thus imposed upon him. In State v. Vanicor, 239 La. 357, 118 So.2d 438 (1960), the phrase "under circumstances which indicate that said possession is for the purpose of illegally taking commercial fish" was found to be unconstitutionally vague because the statute failed to provide a clear definition of "circumstances," a word susceptible of many interpretations, or even to provide a standard by which such "circumstances" could be judged. In State v. Murtes, 232 La. 486, 94 So.2d 446 (1957), we invalidated a statute prohibiting any legislator or executive officer from being "in any way interested" in certain contracts, because it failed to define the offense with specificity and accuracy sufficient to enable an individual to know whether his conduct fell on one side or the other of the borderline between the permissible and the impermissible. In a series of cases, the United States Supreme Court determined that the terms "unjust," "unreasonable," and "excessive," as applied by the Lever Act to certain prices, had no commonly accepted or recognized meaning. See discussion in Small Co. v. American Sugar Refining Co., 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589 (1924).
Even if, as the state proposes, we limit our evaluation of the definiteness of the words "usual," "reasonable," and "proper" to the question of whether those within the reach of this regulation (ordinary reasonably intelligent operators of sewage treatment plants or disposal systems) can discern the meaning of these words and conform their conduct thereto, we must find that the words are so vague and indefinite that these businessmen would be forced to guess their meanings. The state also contends, in brief, that any deficiency in the definiteness of the regulation may be compensated for by the defendant's ability to seek clarification of the charges against him by availing himself of discovery devices. This argument ignores the fact that one of *418 the regulation's fatal shortcomings is its failure to provide adequate prior notice of the nature of criminal conduct.
Similarly, the regulation fails to provide adequate standards by which a judge or jury may determine the guilt or innocence of an accused. At the hearing on the motion to quash the state's expert witness agreed, on cross-examination, that a lay person of common intelligence would not know "what's the usual and the proper maintenance of a sewerage system;" he would certainly be equally unequipped to decide what measures were "usual" and "reasonable." At the hearing, the state attempted to show that a determination that an "unreasonable" method was being employed could be made in a situation in which raw sewage was found in the streets or ditches of a subdivision; and in brief, the statute argues that the regulation should be construed to apply to "obvious catastrophes to public health and welfare." But in State v. Truby, 211 La. 178, 201, 29 So.2d 758, 765 (1947), this court noted that "[i]t is well settled that the determination or definition of acts which are punishable as crimes is a purely legislative function which cannot be delegated to, or exercised by, the courts." The Truby court quoted with approval the language of United States v. Reese, 92 U.S. 214, 221, 23 L.Ed. 563, 566 (1876): "It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." The enforcement of the regulation before us today would result in the very situation decried in Truby and Reese.
We therefore affirm the trial court's finding that § 10:22 of the sanitary code is unconstitutionally vague, and affirm the judgment quashing the bill of information.
NOTES
[*] Honorable Jesse N. Stone, Jr. served as Justice Ad Hoc in the vacancy created by the resignation of Tate, J.
[1] "Overbreadth" is a doctrine of fairly recent origin (Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), dissenting opinions), and is generally applicable only to First Amendment cases. See Schopler, Annotation, Supreme Court's Views as to Overbreadth of Legislation in Connection with First Amendment Rights, 45 L.Ed.2d 725 (1976).
[2] Since the constitutionality of this regulation was challenged on the ground of vagueness, that is the sole issue before us here. It should be noted, however, that where, as here, a statute provides criminal sanctions for violations of regulations established by an administrative agency, this may constitute an unconstitutional delegation of the legislature's exclusive authority to determine what conduct is unlawful. The definition of criminal conduct is solely a legislative function, and the delegation of legislative power is strictly limited in Louisiana by the state Constitution.

See Note, Constitutional Law, Delegation of Legislative Power, 14 Tul.L.Rev. 291 (1940); Louisiana Constitution of 1974, Arts. 2 and 3 § 1(A).
In State v. Snyder, 131 La. 145, 59 So. 44 (1912), this court upheld a criminal conviction for violation of the sanitary code. The court was careful to note, however, that Art. 296 of the Constitution of 1898 expressly provided that "[t]he General Assembly shall create for the State, and for each parish and municipality therein, Boards of Health, and shall define their duties, and prescribe the powers thereof," so that the delegation of legislative power was constitutionally authorized. The Constitutions of 1913 and 1921 retained the exact wording of the 1898 provision quoted in Snyder, but the Constitution of 1974, Art. 12 § 8, provides only that "[t]he legislature may establish a system of economic and social welfare, unemployment compensation, and public health;" under Art. 14 §§ 16 and 17, the corresponding provision of the 1921 Constitution is repealed.
The 1974 Constitution, Art. 14 § 6, also directed the legislature to reorganize all agencies within the executive branch of the government. Pursuant to that mandate, R.S. 36:251 was enacted by Act 513 of 1976 to create the Department of Health and Human Resources and to include within its functions the preparation and supervision of the state sanitary code. That department replaced the State Board of Health and Human Resources Administration, promulgator of the sanitary code, which was in turn created under the authority of Act 253 of 1972 to replace the Louisiana State Board of Health. The agency currently charged with preparation of the sanitary code is therefore not operating under a delegation of legislative power which is constitutionally authorized. The regulatory scheme here must therefore be distinguished from the system at issue in Snyder, supra. Rather, it is analagous to the situation in State v. Maitrejean, 193 La. 824, 192 So. 361 (1939), where the legislature created the Louisiana Milk Commission, empowered it to regulate milk production and sale, and provided that any violation of such regulations would constitute a misdemeanor. Because this delegation of legislative power was not specifically authorized by the Constitution, this court held it to be unconstitutional.