Dear Mr. Hilzim:
You have requested an opinion of the Attorney General regarding the motion picture investor tax credit provided for in LSA-R.S.47:6007. This legislation was enacted by Act No. 894 of the 1992 Regular Session of the Louisiana Legislature.
As you are aware, the act's primary objective is to encourage the development of a motion picture film, videotape, and television program production industry in Louisiana. To accomplish this purpose, the legislature seeks to attract private investment by offering investors state income tax credits to offset investment base losses.
You state that you have received many inquiries from potential taxpayers/investors relative to the tax benefits afforded by the act. You further state that, in your opinion, the provisions of Section 6007 may be subject to different interpretations. You have requested our opinion on twenty-three such questions.
Initially, it should be noted that the provisions of Section 6007 constitute general guidelines only, the intent and purposes of which must be carried out through the promulgation of rules and regulations. Thus, Section 6007(E)(1) and (3) provides:
"E. Certification and administration.
 (1) The lieutenant governor and commission shall determine through the promulgation of rules what projects contain substantial Louisiana content. To this end, the commission shall establish a point system such that a minimum number of total points must exist in order for the commission to certify that the production contains substantial Louisiana content. Criteria shall be based on the utilization of talent and resources available in Louisiana. As availability of talent and resources increases over time, so shall the difficulty in receiving certification of substantial Louisiana content. Prior to adoption, these rules shall be approved by the House Committee on Ways and Means, the Senate Committee on Revenue and Fiscal Affairs, the House Committee on Municipal, Parochial and Cultural Affairs, and the Senate Committee on Commerce and Consumer Protection.
* * *
 (3) The secretary of the Department of Revenue and Taxation, in consultation with the lieutenant governor and the director of the Louisiana Film Commission, shall promulgate such rules and regulations as are necessary to carry out the intent and purposes of this Section in accordance with the general guidelines provided herein." (Emphasis added.)
As we discussed by telephone, the vast majority of your questions are not addressed within the general framework of the statute. Rather, they must be addressed through the rule-making process. You advise that, to date, no rules or regulations have been promulgated to carry out the intent and purposes of Section 6007. This has been confirmed by Michael D. Pearson, Income Tax Division, Department of Revenue and Taxation. Apparently, it is the consensus among the Louisiana Film Commission (Commission), the Department of Revenue and Taxation (DRT), and your office, that the necessary rules and regulations be promulgated as soon as is reasonably possible. We concur in this assessment and would be happy to assist you in any way possible during the course of this process.
It is a well-established rule of constitutional jurisprudence that although the legislature may not delegate purely legislative power, it may declare its will, and, after fixing a primary standard, devolve upon administrative officers the power to fill in the details by prescribing administrative rules and regulations. State v. Union Tank Car Co., 439 So.2d 377 (La. 1983).
Conversely, an administrative agency of the state cannot adopt and enforce an administrative rule which enlarges the powers delegated to it by the legislature. Realty Mart, Inc. v. Louisiana Board of Tax Appeals, 336 So.2d 52 (La.App. 1st Cir. 1976) and Kramer v. State Board of Veterinary Medical Examiners,55 So.2d 93 (La.App. 1st Cir. 1951). As explained by the Supreme Court in Benson and Gold Chevrolet, Inc. v. Louisiana Motor Vehicle Commission, 403 So.2d 13 (La. 1981):
 "Although a regulatory agency is entitled to a certain amount of hegemony over the statutes it is entrusted to administer, it cannot go too far afield from the letter of the law even if it perceives that it is furthering the law's spirit . . . the principal is well established that an administrative agency must act in conformity with its statutory authority, which it cannot exceed."
Thus, the Commission, DRT and the Department of Culture, Recreation and Tourism should be guided by the above authorities when adopting and executing the appropriate rules and regulations essential to the legislature intent espoused in Section 6007.
We turn now to your questions. In addressing each question, we will designate those which we believe must be resolved through the rule-making process by the appropriate agency.
Your first question asks our interpretation of the phrase "actually invested" in Section 6007(B)(2). This term is not addressed or defined within the general framework of the statute. We believe this phrase should be clarified through the rule-making powers of the Commission, DRT and your office.
You next ask our interpretation of Section 6007(B)(4) which provides:
 "(4) `Headquartered in Louisiana' shall mean a corporation incorporated in Louisiana for the purpose of producing motion pictures or commercials intended for a theatrical release or for television viewing."
You ask whether the term "corporation" encompasses other non-corporate business entities such as partnerships, partnerships in commendam, estates, foreign corporations, etc. . . . The term "corporation", itself, is not defined by Section 6007. However, the language contained in (B)(4) clearly refers to a "corporation incorporated in Louisiana". LSA-R.S. 12:1(G) defines "corporation" as a "corporation for profit formed under this Chapter".
The rules of statutory construction dictate that words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. LSA-R.S. 1:3 and LSA-C.C. art. 3. Based on this legal tenet, it is our opinion that the term "corporation" as used in Section 6007(B)(4) must be limited to corporate entities incorporated in Louisiana. Your attention is further directed to Section 6007(B)(10) with regard to motion picture production companies. It stipulates that such companies be domiciled and headquartered in Louisiana. Expansion to include non-corporate entities should be accomplished through remedial legislation.
Your next five questions relate to the availability, vel non, of the tax credit to various categories of taxpayers/investors (e.g., general partnerships, limited partnerships, and limited liability companies). Again, these questions are not addressed within the general guidelines of the statute. Therefore, we believe that the questions should be addressed and resolved by the DRT under current tax regulations or by the promulgation of additional rules pursuant to Section 6007(E)(3).
Your next question assumes that a tax credit is available to a taxpayer entity. You ask whether a member of that entity (e.g., shareholder) is entitled to a tax credit if the individual's share of the total base investment is less than Two Million and 00/100 ($2,000,000.00) Dollars. Our reading of Section 6007(C) leads to the conclusion that the tax credit is premised on the total base investment, not the investments made by individuals comprising the taxpayer entity.
Further, we draw your attention to Section 6007(B)(2) which defines "base investment" as eighty-five (85%) percent of the funds actually invested. In other words, the total investment must actually be in excess of Two Million and 00/100 ($2,000,000.00) Dollars for the taxpayer to be eligible for the tax credit.
Section 6007(B)(9) defines the "projected payback" as the three-year period, beginning with the release date, whereby investors are expected to recover their investment. We believe the term may be subject to more than one definition depending on the medium being released (i.e., motion picture vs. television). Consequently, we are of the opinion that the term should be further defined via the rule-making process.
You next ask whether the tax credit can be applied retroactively to tax liabilities. A review of Section 6007 reveals no provision authorizing the retroactive application of tax credits. Conversely, Section 6007(C)(2) authorizes the application of tax credits to tax liabilities for the subsequent ten years.
Since the tax credit is based on investor loss, and investor loss is, by definition, the difference between the investor's base investment and actual revenues received in the projected payback period, it would appear that the tax credit could not be applied to a tax liability until the tax year falling three years after the release date. In other words, the tax credit is not realized or earned until the projected payback period has expired. The DRT may wish to clarify this issue under its rule-making authority or by statutory amendment.
Section 6007(C)(1) authorizes the tax credit for the taxpayer domiciled in the state of Louisiana. Whether a taxpayer meets the domiciliary requirements for tax credit purposes should be determined by the DRT pursuant to current regulations or by the promulgation of additional rules.
You next ask whether Section 6007(C)(2) authorizes the use of the entire remaining tax credit in the next tax year. Assuming a tax liability of equal proportion exists, the residual tax credit may be taken, in toto, in the next tax year. As discussed hereinabove, a tax credit is not earned until the first tax year after the three-year projected payback period has expired.
Section 6007(D) provides for investment loss tax credits for taxpayers participating in more than one state-certified production. The term "participating" is not defined in the statute. While it would appear the term can be used interchangeably with "investing", we recommend that it be clarified through the rule-making process.
Unlike tax credits for specific projects, there is no minimum investment amount necessary for a taxpayer to earn a tax credit as a result of participation in multiple projects.
You next ask what is the maximum length of time allowable between the taxpayer's participation in a previous production and the time a current investment loss arises. The general guidelines comprising the statute do not address this issue. Therefore, we recommend that the DRT clarify same through its rule-making authority.
In answer to your first general question, a tax credit is not earned until the first tax year after the three-year projected payback period. Assuming the taxpayer incurs a tax liability in that year, the tax credit is available to, and can be used by, the taxpayer.
The statute is silent regarding the taxpayers' ability to debt finance the investment and to transfer (i. e., buy or sell) earned tax credits. These issues should be addressed via the rule-making process or remedial legislation.
Trusting this opinion adequately responds to your inquiries, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/bb 0117R