708 So.2d 401 (1998)
STATE of Louisiana
v.
Timothy G. BYRD, Sr., Morris Peltier and Peter F. Nicolosi.
No. 96-KA-2302.
Supreme Court of Louisiana.
March 13, 1998.
Rehearing Denied April 24, 1998.
*402 Richard P. Ieyoub, Attorney General, Michael Harson, District Attorney, Mary P. Jones, Kathleen E. Petersen, Baton Rouge, for Applicant.
Patrick R. Bossetta, New Orleans, Mark R. Tammariello, Patrick J. Hanna, Lafayette, for Respondent.
Ann C. Coco, John B. King, Baton Rouge, for Amicus Curiae Department of Environmental Quality.
JOHNSON, Justice.[*]
In this case, we must decide whether the trial court erred in holding a state statute *403 unconstitutional on the basis of vagueness. The defendants were indicted for violating La. R.S. 30:2183(G)(1) by knowingly storing hazardous waste at their Marco of Iota, Inc. facility located on Louisiana Highway 370 in Acadia Parish. Following a hearing on defendants' motion, the trial judge quashed the indictment, finding that the "catch-all" provision contained within the statute was so overbroad, it was rendered unconstitutionally vague. Pursuant to La. Const. art. V, § 5(D), the State filed a direct appeal to this court. Although language contained within the "catch-all" provision of La. R.S. 30:2183(G)(1) is somewhat expansive because it refers the reader to the entire Chapter on Hazardous Waste Control, we find that the trial court erred in holding the statute unconstitutional. Additionally, we find that the statute does not constitute an unauthorized delegation of legislative authority.

FACTS AND PROCEDURAL HISTORY
Pursuant to an indictment issued by an Acadia Parish Grand Jury, the defendants, Peter F. Nicolsi, Morris Peltier, Jr. and Timothy G. Byrd, Sr. were charged with violating La. R.S. 30:2183(G)(1).[1] The indictment charged that each of these defendants knowingly stored hazardous waste at their facility located in Acadia Parish, without a permit or interim status for such storage. The indictment further charged George S. Yasmine, Billy R. Crawford and Timothy J. Kern with violating La. R.S. 30:2183(G)(2) for knowingly storing hazardous waste at the same facility.[2]
The defendants assert that their involvement in Marco stems from Marco's filing for bankruptcy. On October 24, 1989, Marco, a Louisiana corporation, filed for protection under Chapter 11 of the U.S. Bankruptcy Code. The defendants assert that because Marco was a hazardous waste storage facility, the bankruptcy was "heavily litigated," and the bankruptcy court was "much more strict" and required "much more detail than what ordinarily goes into a plan of reorganization."[3] John Weinstein, an attorney who testified at the motion to quash hearing, characterized Marco as "a fuel-blending partially hazardous waste storage facility."[4]
In September of 1990, defendant Peter F. Nicolosi became president of a company known as Reo International. Defendant Timothy Byrd was the secretary-treasurer, and defendant Morris Peltier was employed as a consultant. Reo was a separate corporation whose role in the bankruptcy was to recapitalize Marco so that it could satisfy its creditors. After confirmation of the reorganization plan, Marco was to reissue its stock to Reo in consideration for the recapitalization.
Each of the three defendants in May of 1996 filed a motion to quash alleging the following: 1) the indictment failed to charge an offense which is punishable under a valid statute; 2) the indictment contains an improper misjoinder of offenses[5]; and, 3) R.S. 30:2183(G)(1) is unconstitutionally vague. Specifically, defendants argued that there was no crime for "storage" of hazardous waste within R.S. 30:2183(G)(1) and that the attempt to utilize the body of hazardous waste regulations as the basis of the charge against them failed to give adequate notice and provide adequate standards. Defendants contend that by virtue of the state's first response to their motion for a bill of particulars, (i.e., "See indictment") the state was effectively charging them with violating the entire body of hazardous waste regulations (via R.S. 30:2183(G)(1) and 30:2202(B)).[6] *404 Defendants further contend that at the time of the alleged conduct, the Marco facility was in full compliance with the Louisiana Hazardous Waste Control Law (HWCL) and the hazardous waste regulations and that Reo did not own or operate the Marco facility at that time.
On July, 10, 1996, the trial court conducted a hearing which encompassed defendants' motions to quash.[7] At the conclusion of the hearing, the lower court opined that the indictment lacked definiteness as to what activity was prohibited by the statute at the time of the alleged violations. After hearing testimony from Weinstein regarding the bankruptcy case, the trial court quashed the indictment.[8] In quashing the indictment, the district court found:
"there is a lack of definiteness as to what the state of the law was at the time of the alleged criminal activity. Furthermore, the Court finds that the section of the statute relied on by the State, namely the "catch-all" section prohibiting any person who otherwise knowingly violates any provision of the Chapter to be subject to criminal sanctions, to be so overbroad as to be unconstitutionally vague since it does not specifically state charges against these three defendants so as to allow them to adequately prepare for a defense."
The trial court based its ruling upon two cases dealing with constitutional vagueness, State v. Union Tank Car Co., 439 So.2d 377 (La.1983) and State v. Dousay, 378 So.2d 414 (La.1979). The trial court determined that there was no basis to quash count one of the indictment. However, the motions to quash count two filed on behalf of Nicolsi, Peltier and Byrd were granted. This opinion only involves the violations listed in count two.
The parties presented their arguments before this court on October 20, 1997, at which time the defendants alleged that the crime with which they were charged was created by a state agency and constitutes an improper delegation of legislative authority. At the conclusion of oral argument, the parties were instructed to file supplemental briefs on this issue.

DISCUSSION

Delegation of Legislative Authority
Under proper circumstances, our case law allows the delegation of legislative authority to executive agencies. In Schwegmann Brothers Giant Super Mkts. v. McCrory, 237 La. 768, 112 So.2d 606 (1959), this court concluded that our Legislature may confer authority on administrative boards and commissions to determine the facts or state the things upon which the law intends to make its action depend. There, we found:
"It is now well settled that the Legislature may make the operation or the application of a statute contingent upon the existence of certain conditions, and may delegate to some executive or administrative board the power to determine the existence of such facts and to carry out the terms of the statute. So long as the regulation or action of the official or board authorized by statute does not in effect determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within the prescribed limits some fact upon which the law by its own terms operates, such regulation is administrative and not legislative in its nature." *405 Schwegmann, 112 So.2d at 613; State v. All Pro Paint & Body Shop, Inc. 93-1316 (La.7/5/94); 639 So.2d 707.
While an administrative agency can conduct ministerial or administrative duties, to determine whether a statute unconstitutionally delegates legislative authority to such agency, our jurisprudence employs a three-prong analysis which is referred to as the Schwegmann test. A statute that delegates legislative authority to an administrative agency is constitutional where: (1) the statute contains a clear expression of legislative policy; (2) prescribes sufficient standards to guide the agency in the execution of that policy; and, (3) is accompanied by adequate safeguards to protect against abuse of discretion by the agency. All Pro Paint & Body Shop, 639 So.2d at 712; State v. Barthelemy, 545 So.2d 531, 533 (La.1989); Union Tank Car, 439 So.2d at 381.
Initially, we must determine whether the statute at issue, La. R.S. 30:2183(G)(1), expresses a clear legislative policy. The purpose of the HWCL is found at La. R.S. 30:2172(B), which states:
"In order to diminish the risks to which the citizens and environment of this state are being exposed it is in the public interest, and within the police power of the state, to establish a framework for the regulation, monitoring, and control of the generators, transportation, treatment, storage, and disposal of such hazardous wastes, and it is the declared purpose of this Chapter to authorize the development, implementation, and enforcement of a comprehensive state hazardous waste control program."
Because La. R.S. 30:2183(G)(1) contains an appropriate legislative policy aimed at reducing the risks involving hazardous wastes to both the citizens of this state and the environment, the statute meets the first prong of the Schwegmann test.
Next, we must decide whether La. R.S. 30:2183(G)(1) provides guidance for administrative officials in executing the law. Our decision rendered in All Pro Paint & Body Shop, Inc. adequately addressed any concerns involving this segment of the Schwegmann test. We found that:
"the HWCL authorizes the DEQ to promulgate regulations implementing a comprehensive state hazardous waste control program that is consistent with the minimum criteria hereinafter set forth and also consistent with the mandates of the federal Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6901 et seq. La. R.S. 30:2175."
All Pro Paint & Body Shop, Inc., 639 So.2d at 717. The case further states that the HWCL grants the Department of Environmental Quality (hereafter referred to as "DEQ") authorization regarding the issuance, modification, continuance revocation and denial of licenses and permits, while prescribing the detailed standards to guide the DEQ in promulgating such regulations that are applicable to owners and operators of hazardous waste treatment, storage and disposal facilities.[9]
The statute further compels this court to conclude that La. R.S. 30:2183(G)(1) properly guides administrative officials in executing the law. The chapter on hazardous waste grants the DEQ authority regarding such things as the issuance, modification, and revocation of licenses and permits, while prescribing the appropriate standards to guide the DEQ regarding the appropriate regulations that are applicable to these defendants as the owners of a hazardous waste treatment, storage and disposal facility. Accordingly, the second prong of the Schwegmann test is satisfied.
Are there adequate safeguards to protect against abuse of discretion by the administrative agency? Protecting the health of its citizens as well as the environment from the potential dangers associated with hazardous waste, is a legitimate state function. The safeguards written into the statute provide protection against any discretionary enforcement of state law. The defendants have the burden of proving abuse of discretion, and they have failed to present evidence revealing any abuse of discretion, therefore, the statute satisfies the third and final prong of *406 the Schwegmann test. Accordingly, we find that there was no improper delegation of legislative authority.

Void-For-Vagueness
The state contends that the trial court erred in finding La. R.S. 30:2183(G)(1) unconstitutionally vague. La. R.S. 30:2183 requires that anyone who generates, transports, or stores hazardous waste in Louisiana must apply to the secretary of the DEQ for a standard or interim permit (as specifically defined in the regulation, LAC 33:V.109) issued (or denied) under the regulations authorized by this subtitle. Subsection (G)(1) of this statute provides:
"Any person who willfully or knowingly discharges, emits, or disposes of any substance in contravention of any provision of this Chapter or any regulations or of any permit or license terms and conditions adopted in pursuance thereof, or any person who otherwise knowingly violates any provision of this Chapter, shall, upon conviction be subject to a fine of not more than one hundred thousand dollars per day of violation and costs of prosecution, or imprisonment at hard labor for not more than ten years or both."
The defendants were charged under the "catch-all" section of the statute, i.e., "any
person who otherwise knowingly violates any provision of this Chapter."[10] The state expounded upon this in its supplemental response to defendants' motion for a bill of particulars citing various hazardous waste regulations. La. R.S. 30:2202(A) provides that "[n]o person shall initiate or continue the generation, transportation, treatment, storage, or disposal of hazardous waste except as in compliance with the provisions of this Subtitle." Subsection B goes on to provide that "[n]o person shall violate any rule or regulation adopted by the secretary under this Subtitle."
In the instant case, defendants contend that the statute is vague as applied because the state's attempt to utilize the entire body of hazardous waste regulations as the basis to substantiate the charge fails to give adequate notice and provide adequate standards.[11] Indeed, the trial court's use of the word "overbroad" appears to be in reference to this very point.
*407 This argument, however, completely disregards the specificity contained within the indictment and the supplemental response to the bill of particulars. First, defendants' argument does not account for the fact that the original indictment charged them with storage of hazardous waste without a permit or interim status. These two concepts narrow the scope of the possible violations considerably in that the alleged criminal conduct is specified, i.e., the facility was storing hazardous waste without the proper permits. In addition, the state cited a number of regulations that defendants allegedly violated and specifically cited the containers at the Marco facility illegally holding the hazardous waste which narrowed the potential scope of defendants' criminal conduct even more.[12] Furthermore, at an earlier hearing on November 8, 1995, defendants stated that they "would deem the answers to the Bill of Particulars sufficient," thereby conceding that they were satisfied with the specificity of the state's responses. Consequently, it simply is not true that defendants could not discern which regulations they were charged with violating.
An additional component to defendant's argument is that because they are "businessmen" they should not be charged with knowledge of the two volumes worth of hazardous waste regulations. First, defendants do not elaborate on this point nor do they explain how this relates to the instant case. Furthermore, the United States Fifth Circuit recently observed, where dangerous or deleterious devices, products or obnoxious waste materials are involved, "the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation[s]." United States v. Sellers, 926 F.2d 410, 415-16 (5th Cir.1991) (quoting, United States v. International Minerals & Chemical Corp., 402 U.S. 558, 564-65, 91 S.Ct. 1697, 1701-1702, 29 L.Ed.2d 178, 183 (1971)); see also Ed Taylor *408 Construction Co. v. Occupational Safety and Health Review Commission, 938 F.2d 1265, 1272 (11th Cir.1991) ("Whether or not employers are in fact aware of each OSHA regulation and fully understand it, they are charged with this knowledge and are responsible for compliance."); North Ala. Express Inc. v. United States, 585 F.2d 783, 787 n. 2 (5th Cir.1978) ("Assuming that the contents of the published notice are otherwise complete, it is well settled that publications in the Federal Register are deemed legally sufficient notice to all interested persons."). Consequently, because the state sufficiently narrowed the statutes and regulations under which it was seeking criminal prosecution against the defendants, it cannot be concluded that defendants were not given "notice" of what the state sought to prove at trial.
The trial court's ruling also makes reference to the statutory construction of La. R.S. 30:2183(G)(1) in that the "catch-all" phrase does not state what conduct is criminal, but rather refers the reader to other statutes contained in the HWCL. Thus a component of the trial court's ruling seems to be that the statute is unconstitutionally vague on its face.
Statutes are presumed valid and their constitutionality should be upheld whenever possible. State v. Griffin, 495 So.2d 1306, 1308 (La.1986). Louisiana criminal statutes must be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." See La. R.S. 14:3. A statute is unconstitutionally vague if an ordinary person of reasonable intelligence is not capable of discerning its meaning and conforming his conduct to the dictates of the statute. State v. Greco, 583 So.2d 825, 828 (La.1991); State v. Pierre, 500 So.2d 382, 384 (La.1987); see also Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903, 910 (1983); Palmer v. City of Euclid, 402 U.S. 544, 545, 91 S.Ct. 1563, 1564, 29 L.Ed.2d 98, 100 (1971); Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926) ("a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law").
Under the "void-for-vagueness" doctrine, a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of the accused. State v. David, 468 So.2d 1126 (La.1984), cert. denied, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678; see also La. Const. art. 1 § 13 ("[i]n a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him.").[13] In addition, this Court has also noted that "[b]road language is not in itself vague, particularly where it is clear that the legislature intended to make criminal all acts of a certain kind." State v. Defrances, 351 So.2d 133, 136 (La.1977).
In the instant case, under the terms of the statute, the conduct proscribed is unambiguous, i.e., "any person who otherwise knowingly violates any provision of this Chapter...." An "ordinary person" of "reasonable intelligence" is capable of understanding that to comply with La. R.S. 30:2183(G)(1), one must not violate any provision of the HWCL. Thus, compliance with La. R.S. 30:2183(G)(1) merely entails complying with the HWCL, a self-contained body of statutes dealing with hazardous waste. No *409 person in the hazardous waste industry is called upon to determine when, how or where to store, dispose or emit their hazardous waste. Rather, these activities are well regulated by the HWCL and the regulations implementing those statutes.
Secondly, a clear standard exists by which guilt or innocence can be determined namely that a defendant has violated a statute contained in the HWCL. "Either a person has [violated a statute contained in the HWCL] or he has not and the State bears the burden of proving this element of the offense beyond a reasonable doubt." Barthelemy, 545 So.2d at 534.
In addition, by virtue of an indictment or bill of particulars, the exact conduct would be alleged and a defendant could easily find the corresponding statute in the HWCL. Furthermore, as noted earlier with respect to notice, defendants operating in a dangerous industry are charged with knowledge of the regulations of that industry.
As for the trial court's reliance on Union Tank Car Co. and Dousay, these two cases deal with "vague" terms contained in statutes. In the instant case, there are no vague terms; rather, the trial court objected to the construction of the statute in that the statute does not specifically state the various ways in which it may be violated but incorporates other statutes contained within the HWCL as well as the body of accompanying hazardous waste regulations to define the criminal conduct.[14]Union Tank Car Co., 439 So.2d at 385; Dousay, 378 So.2d at 417; see also State v. Gisclair, 363 So.2d 696, 698 (La.1978) ("[d]etailed specification of the various ways in which the crime can be committed is not required to sustain the constitutionality of a penal statute").
The more applicable cases are those cited by the state which deal with statutes which contain terms that are not vague, but rather defined in a separate statute or regulation. In State v. Davis, 448 So.2d 645, 649 (La. 1984), a case similar to the instant one dealing with hunting statutes and regulations, this Court held that although the statute, which prohibited the hunting or taking of "illegal deer," did not itself define the term "illegal deer," it clearly directed the reader to consult regulations of the Wildlife and Fisheries Commission that were clear and unambiguous. Similarly, in the instant case, La. R.S. 30:2183(G)(1) directs the reader to consult the statutes contained in the HWCL and the accompanying regulations which are relatively clear and unambiguous.[15] This court found that this type of statutory construction in Davis, did not violate the constitutional mandates prohibiting vagueness.
On September 29, 1981, the defendants, Bryan D. Windham and Mark D. Davis were deer hunting in Natchitoches Parish. During the hunt, Windham spotted two doe and a spike buck and fired three shots. Neither deer was killed instantly so they kept running. Windham began to trail the deer but found no trace of blood and was not sure if the shots were successful. He began to discuss his actions with a companion when a hunter belonging to a local group walked up and inquired who had shot. Windham responded that he shot at a spike buck. When the other hunters located an injured doe stumbling through the woods, they angrily informed Windham that he had in fact shot a doe, not a spike buck. The other hunters then placed Windham under citizen's arrest. *410 When Davis came to the location where Windham was standing, he boasted that he too had shot a doe. An agent with the Department of Wildlife and Fisheries was notified that both Davis and Windham had shot illegal deer. Upon arriving at the scene, the agent inquired who had shot at the deer. Both defendants readily admitted their actions.
After the deer were gutted, both were placed in the agent's vehicle. The defendants along with the deer were taken to a location where the agent's superior met them and conferred with the agent regarding the activity which had transpired. At that point, the defendants were placed under arrest and charged under La. R.S. 56:123(E)(1)[16], with taking illegal deer.
The defendants filed a motion to suppress evidence and a motion to quash. After a trial on the merits, Windham was found guilty. After his motions were denied, Davis entered a plea of guilty to the charges. The defendants appealed and on writs of certiorari, this court held that the statute proscribing the taking of illegal deer was not unconstitutional on the grounds of vagueness, overbreadth, improper delegation of legislative authority to the executive branch, or improper promulgation of administrative regulations. While we found R.S. 56:123(E)(1) by itself vague in that the statute, along with the remainder of Title 56, failed to provide a definition of what constitutes an illegal deer, La. R.S. 56:123(A) provides that Wildlife and Fisheries may restrict hunting.
The regulations promulgated by Wildlife and Fisheries clearly provided descriptions of what animals may and may not be hunted during specific seasons. Within the regulations was a prohibition against killing female deer except where specifically permitted. Finding La. R.S. 56:123(E)(1) constitutional, we stated "While the statute itself does not define illegal deer specifically, the statute clearly directs the reader to consult regulations of the Wildlife and Fisheries Commission, and those regulations are clear and unambiguous." Davis, 448 So.2d at 649.
Similarly, in State v. Powell, 515 So.2d 1085, 1087 (La.1987), defendant was charged with violating Louisiana's oyster harvesting law, specifically, La. R.S. 56:424(C).[17] This court found that the statute was "not unconstitutionally vague when considered within its regulatory context." See also State v. Barthelemy, 545 So.2d 531, 533 (La.1989).
In Powell, the trial court determined the statute was unconstitutionally vague in that the words "not limited to the area east of the red line described by the department regulations" made it impossible for an accused to determine the location of designated oyster seed grounds.
In reversing the trial court's ruling, this court took into consideration, the regulatory context of the statute. The phrase did not:
"prevent an ordinary man of reasonable intelligence from discerning that he is authorized to take oysters during open season by Subsection (C) only in areas designated by the commission as oyster seed grounds, regardless of where an area may be in relation to the red line described by department regulations."
Powell, 515 So.2d at 1087.
Consequently, when R.S. 30:2183(G)(1) is considered within the context of the other statutes in the HWCL as well as the accompanying hazardous waste regulations, the "catch-all" section of the statute is not unconstitutionally vague. Even though the "catch-all" phrase of the subsection criminalizes knowingly violation of any provision of the Louisiana Hazardous Waste Control *411 Law, our jurisprudence allows reference to other statutes or regulations as a means of defining criminal conduct. Although La. R.S. 30:2183(G)(1) does not itself contain the prescribed criminal conduct, it incorporates by reference the other statutes contained in the HWCL as well as the accompanying hazardous waste regulations defining specific criminal conduct. In addition, the statute is not vague as applied to defendants. Because of the specificity of the indictment as well as the state's response to the defendants' motion for bill of particulars, the defendants were provided with adequate notice of what criminal conduct the state sought to prove. Therefore, we find that the statute is not vague on its face or as applied to defendants.

Motion To Quash Indictment
Defendants also contend that the bill of indictment should have been quashed because they are not guilty of the crime charged, i.e., defendants asserted their "defenses" at the hearing. This was the purpose of attorney Weinstein's testimony at the July 10, 1996 hearing. Specifically, defendants argue that the Marco facility was in compliance with the existing regulations at the alleged time of the offense and that they were no longer affiliated with Marco (i.e., Reo did not own or operate the facility) at the time of the alleged conduct.[18]
A motion to quash is, essentially, a mechanism whereby pre-trial pleas are urged, i.e., pleas which do not go to the merits of the charge. At a hearing on such a motion, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. La. C.Cr.P. art. 531 et. seq.; State v. Rembert, 312 So.2d 282 (La.1975); State v. Patterson, 301 So.2d 604 (La.1974).
In considering a motion to quash, a court must accept as true the facts contained in the bills of information and in the bill of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged; while evidence may be adduced, such may not include a defense on the merits. State v. Gerstenberger, 260 La. 145, 255 So.2d 720 (1971); State v. Masino, 214 La. 744, 750, 38 So.2d 622 (1949) ("the fact that defendants may have a good defense is not sufficient grounds to quash the indictment").
As this Court held in State v. Legendre, 362 So.2d 570, 571 (La.1978), "[t]he question, then, is whether the indictment charges a valid offense.[19] If it does not, it is a defective indictment and its invalidity may be declared by a ruling on a motion to quash, for a motion to quash may be based on the ground that the indictment fails to charge an offense which is punishable under a valid statute." Legendre goes on to note that "[i]t will not do to base an indictment for a serious offense... upon an allegation of fact which cannot conceivably satisfy an essential element of the crime...." Legendre, 362 So.2d 570, 571.
In the instant case, defendants contend that the Marco facility was in fact in full compliance with all the applicable Louisiana and federal regulations and had the proper "status" (i.e., permit or interim status) to handle the hazardous waste contained at its facility. First, it should be noted that these assertions are factual defenses and thus are not a proper grounds for a motion to quash.
In support of their arguments, defendants point to the testimony of attorney Weinstein at the motion to quash hearing as well as a letter from Frank S. Craig, III, an attorney, who was retained by Marco as special counsel for purposes of environmental matters during the bankruptcy proceedings. The letter was written by Craig to Weinstein "regarding the status of Marco of Iota, Inc. with respect to environmental matters." Craig wrote that he "thoroughly researched the available records on file at the Louisiana *412 Department of Environmental Quality to determine Marco's permitting and compliance status with the Hazardous Waste Division, the Solid Waste Division, the Water Pollution Control Division and the Air Quality Division."
Relying on these two pieces of evidence (i.e., the letter and Weinstein's testimony), defendants argue that the Marco facility was properly permitted. However, the problem with this evidence is that Weinstein is a bankruptcy attorney and the letter is Craig's interpretation of the records of the DEQ not an official interpretation by the DEQ itself. Finally both attorneys were hired by Marco of Iota, Inc. and therefore are not impartial parties.
Furthermore, it is also cause for concern that defendants did not introduce into evidence at the hearing, the "permit" papers themselves, nor did they subpoena someone from the DEQ to testify to Marco's status. Instead, they relied upon secondary evidence in an attempt to prove they were properly permitted. This type of evidence is not indisputable proof that defendants were in compliance with the regulations.[20]
Defendants also argue that their role in this matter was solely as a financier of Marco and as such they had no involvement in the operation or management of Marco and thus cannot be held liable for the functions of the facility. Defendants, however, offer no proof of this other than to state as much in their brief. Consequently, there was no evidence before the trial court whereby it could have found that defendants' assertions were in fact correct.
Hence these allegations by the defendants are defenses on the merits to the state's charge and should be raised at trial. They are not proper grounds for a motion to quash. Therefore, this argument lacks merit.

DECREE
For the foregoing reasons, we find La. R.S. 30:2183(G)(1) constitutional as applied by the State in the indictment against the defendants and reverse the trial court's ruling. This case is remanded to the trial court and the criminal proceedings against the three named defendants listed in count two of the indictment, shall proceed.
REVERSED AND REMANDED.
KNOLL, J., dissents and assigns reasons.
MARCUS, J., dissents.
TRAYLOR, J., dissents for reasons assigned by Knoll, J.
KNOLL, Justice, dissenting.
I find the trial court correctly found the statute unconstitutionally vague.
In the present case, the indictment charged that the defendants violated La.R.S. 30:2183(G)(1) by knowingly storing hazardous waste at their Acadia Parish facility without a permit or interim status for such storage. After the defendants were indicted, they filed a motion for a bill of particulars which requested as follows:
Upon what particular statute or statutes, is it that this prosecution is based, and more particularly, what section and/or subsections of said Statute is it contended that the defendant[s] violated?
In response to this query, the State responded, "See Indictment." No other statute was cited nor was any regulation referenced.
La.R.S. 30:2183(G)(1), the statute at issue, provides:
Any person who willfully or knowingly discharges, emits, or disposes of any substance in contravention of any provision of this Chapter or any regulations or of any permit or license terms and conditions adopted in pursuance thereof, or any person who otherwise knowingly violates any provision of this Chapter, shall upon conviction be subject to a fine of not more than one hundred thousand dollars per day of violation and costs of prosecution, or *413 imprisonment at hard labor for not more than ten years, or both.
(Emphasis added).
An indictment is a written accusation of a crime. La.Code Crim.P. art. 383. The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. La.Code Crim.P. art. 464.
On its face La.R.S. 30:2183(G)(1) shows that the defendants were indicted on the charge of storing hazardous waste, a crime not prohibited in the statute charged. Notwithstanding, the majority finds that the defendants were charged with a constitutionally sanctioned crime because they were in violation of the catch-all section of La.R.S. 30:2183(G)(1) as persons who "knowingly violate[d] any provision of this Chapter...." With this as a starting point, the majority makes a quantum leap and finds that under La.R.S. 30:2180, et seq., the Louisiana Department of Environmental Quality is authorized to promulgate rules and regulations for the management of hazardous wastes. Then, taking it a step further, finds that under 33:V.305 permits are required for the treatment, storage, and disposal of hazardous waste and that storage of hazardous waste without a permit is proscribed criminal conduct.
It is hornbook law that penal statutes "must be strictly construed and cannot be extended to cases not included within the clear import of their language, and that nothing is a crime which is not clearly and unmistakably made a crime." La.R.S. 14:3; La. R.S. 14:7; State v. Union Tank Car, 439 So.2d 377, 385 (La.1983). Likewise, a penal statute is unconstitutionally vague if it fails to notify persons of reasonable intelligence that certain, particular conduct is proscribed and legally punishable, or if it fails to provide measurable standards for persons to determine guilt or innocence. State v. Davis, 448 So.2d 645 (La.1984); State v. Dousay, 378 So.2d 414 (La.1979).
Applying this well established jurisprudence to the present case, I find that the trial court was eminently correct in finding La. R.S. 30:2183(G)(1) unconstitutionally vague. As pointed out herein, La.R.S. 30:2183(G)(1) does not proscribe the storage of hazardous waste.[1] By utilizing an attenuated reference to a myriad of regulations to prop up the statute in question, the majority has expanded La.R.S. 30:2183(G)(1) beyond the provisions of the legislative enactment and has created a crime which does not exist. For these reasons, I respectfully dissent and would affirm the trial court's determination that La.R.S. 30:2183(G)(1) is unconstitutionally vague.
NOTES
[*] Victory, J., not on panel. See Rule IV, Part 2, § 3.
[1] These charges composed count two of the indictment which was filed on August 5, 1994.
[2] Count one of the indictment charged Yasmine, Crawford and Kern with knowingly storing hazardous waste at the Marco of Iota, Inc., facility in such a manner that they knew or should have known that they thereby placed another person in imminent danger of death or serious bodily injury without a permit or interim status for such storage.
[3] Weinstein represented Marco, the debtor, in their bankruptcy case filed in the United States Bankruptcy Court, Western District of Louisiana.
[4] The Louisiana Department of Environmental Quality was a creditor of Marco and was represented at most of the hearings.
[5] The trial court rejected this argument and neither party raises it on appeal.
[6] Secondarily, defendants also note that some of the regulations cited by the state in their amended and supplemental answer to defendants' motion for bill of particulars were not in effect at the time of the alleged conduct. This argument, however, was not raised in defendants' motion to quash nor was it raised at the hearing and consequently was not a basis for the trial court's decision.
[7] There were several motions set for consideration, including motions for additional discovery, and motions to reconsider severance. Also, Yasmine, Crawford and Kern filed motions to quash the charges outlined in count one of the indictment.
[8] Weinstein testified that he represented Marco in their bankruptcy proceeding. He went on to testify that the issue of whether Marco was properly permitted was litigated during the bankruptcy proceedings. The defense attorney went on to question Weinstein about Reo's role in the bankruptcy proceeding as well as Marco's compliance with the hazardous waste regulations. Weinstein responded that his specialty was bankruptcy and not environmental compliance and consequently, he could not state whether Marco was in compliance with the hazardous waste regulations.
[9] See All Pro Paint & Body Shop, Inc., 639 So.2d at 718.
[10] As a general matter, Louisiana has enacted a comprehensive scheme to restore, maintain and ensure against future degradations of a healthful and safe environment for its people. See Environmental Quality Act, La.R.S. 30:200l et seq. The Hazardous Waste Control Law forms Chapter 9 of that Act. See La. R.S.30:2l7l et seq. The purpose of this specific legislation is to identify, monitor and control the generation, transportation, treatment, storage and ultimate disposal of byproducts and wastes posing substantial present or future danger to the safety and health of the public as well as to the integrity of the environment. See La. R.S. 30:2173.
[11] Initially, defendants argue that there is no crime for storage of hazardous waste contained in R.S. 30:2183(G)(1). Although the first part of subsection G(1) does not mention storage (rather it criminalizes "[a]ny person who willfully or knowingly discharges, emits, or disposes of any substance ...."), the second part of the subsection includes a "catch-all" provision that criminalizes violation of any statute contained in the HWCL. La. R.S. 30:2202(A), which is part of the HWCL, prohibits illegal storage of hazardous waste. Consequently, via the "catch-all" provision of subsection G(1), the state properly charged that defendants illegally stored hazardous waste. Consequently, this argument lacks merit.

Additionally, the defendants note in their brief that they filed a motion for bill of particulars which requested, "[u]pon what particular statute or statutes, is it contended that this prosecution is based, and more particularly, what section and/or sections of said statute is it contended that the defendant violated?" To this request, the state responded, "See Indictment." Later on, however, in a supplemental reply to the bill of particulars, the state cited regulations that accompany La. R.S. 30:2202 as well as regulations that define the type of hazardous waste at issue.
Furthermore, defendants also argue that if permits and/or interim status are issued to facilities, "it is the facility which is being regulated." Because of this, defendants argue that they cannot be charged with violating permit/interim status regulations because they are not a "facility." This argument simply ignores the statutory language of and interplay between the statutes contained in the HWCL and the accompanying hazardous waste regulations. Although facilities must have a permit, individuals who are the owners or operators of such facilities apply for those permits. LAC 33:V.305.A. In addition, La. R.S. 30:2183(G)(1) criminalizes an individual's actions for violating a statute contained in the HWCL. Finally, this specific issue was not before the trial court and consequently was not ruled on by the court. Therefore, this argument lacks merit.
[12] The state's amended and supplemental bill of particulars stated that "[t]he defendant's storage of hazardous wastes in containers at the Marco of Iota, Inc., facility in Iota, Louisiana, without interim status for such storage was in violation of the following regulations: LAC 33:V.105.F; LAC 33:V.303.B; LAC 33:V.303.D; LAC 33:V.305.A: LAC 33:V.305.E; and LAC 33:V.4303.A.".

These regulations provide the following:
LAC 33:V.105.F: "Relationship to Interim Status Standards. A facility owner or operator who has fully complied with the requirements for interim status must comply with these regulations until final administrative disposition of his permit application is made. After the effective date of these regulations, the treatment, storage, or disposal of hazardous waste is prohibited except in accordance with a permit (standard or interim). The administrative authority may provide for the continued operation of an existing facility which meets the requirements of these regulations and certain conditions until final administrative disposition of the owner's or operator's permit application is made."
LAC 33:V.303.B: "Treatment, storage, or disposal of hazardous waste is prohibited by any person who has not received an interim status or a standard permit."
LAC 33:V.303.D: "No facility may be used to treat, store, and/or dispose of hazardous waste without a permit for the specific activities, procedures, and classification of waste handled as outlined in their permit, or in emergency situations under the direction of the administrative authority as provided in LAC 33:V.701 or 703."
LAC 33:V.305.A: "A permit is required for the treatment, storage, and disposal of any hazardous waste as identified or listed in LAC 33:V.Chapter 49. The terms `treatment,' `storage,' `disposal,' and `hazardous waste' are defined in LAC 33:V.109. Owners and operators of hazardous waste management units must have permits during the active life (including the closure period) of the unit. Owners or operators of surface impoundments, landfills, land treatment units, and waste pile units that received wastes after July 26, 1982, or that certified closure (according to LAC 33:V.4387) after January 26, 1983, must have post-closure permits, unless they demonstrate closure by removal as provided under LAC 33:V.305.F and G. If a post-closure permit is required, the permit must address applicable groundwater monitoring, unsaturated zone monitoring, corrective action, and post-closure care management facility or unit does not affect the requirement to obtain a post-closure permit under this Section."
LAC 33:V.305.E: "Permits for Less Than an Entire Facility. The administrative authority may issue or deny a permit for one or more units at a facility without simultaneously issuing or denying a permit to all of the units at the facility. The interim status of any unit for which a permit has not been issued or denied is not affected by the issuance of denial of a permit to any other unit at the facility."
LAC 33:V.4303.A(1)-(6) deals with changes the owner or operator of an interim status facility may make to the facility such as "[t]reatment, storage, or disposal of new hazardous wastes not previously" in the permit application, "[i]ncreases in the design capacity of processes used at the facility," etc.
[13] As one commentator has noted:

Vagueness imperils the fair administration of legal sanctions in several ways. First, it threatens punishment of people who had no fair warning of what conduct to avoid. Second, by creating interpretive latitude for those who apply the law-police, prosecutors, judges, juries, and others-vagueness permits punishment to be inflicted selectively for arbitrary or improper reasons. Third, a law's vagueness hinders the efforts of reviewing courts to control such abuses in the law's enforcement; the less clear the law is, the less visible-and correspondingly more difficult to detect and correct-are irregular instances of its administration.
Jonathan D. Varat, Encyclopedia of the American Constitution vol. 4, 1955 (Leonard Levy, Kenneth Karst & Dennis J. Mahoney, eds., MacMillian Publ. Co.1986).
[14] At issue in Union Tank Car Co. were certain terms (i.e., "appreciably injure," "beyond inconvenience," "materially injure or interfere" and "reasonable use") that were contained in the regulations for implementation of the Louisiana Air Control Law. 439 So.2d at 385. Similarly, in Dousay, this Court addressed whether the terms "usual," "reasonable" and "proper" contained in the sanitary code were unconstitutionally vague. 378 So.2d at 417. Both cases analyzed whether the terms at issue had a fixed and definite meaning "such that a person of ordinary intelligence would be given fair notice of what conduct is forbidden[.]" Dousay, 378 So.2d at 417 (citing State v. Defrances, 351 So.2d 133, 135 (La.1977)); Union Tank Car Co., 439 So.2d at 385-86. Both found the statutes at issue unconstitutionally vague.
[15] Because environmental law is a relatively new and evolving area of the law which deals with matters of science, there is a certain degree of complexity to the statutes and regulations. See generally, Kenneth M. Murchison, Enforcing Environmental Standards Under State Law: The Louisiana Environmental Quality Act, 57 La. L.Rev. 497 (1997).
[16] In pertinent part, the statute provided that "[v]iolation of the provisions of this Section ... by hunting or taking illegal deer or turkeys in open season constitutes a class three violation." State v. Davis, 448 So.2d 645, 648-49 (La.1984). This statue was repealed by Acts 1992, No. 966, § 2.
[17] The section declared unconstitutional, La. R.S. 56:424(C) reads as follows:

"Oysters may be taken during open season on those areas designated by the commission as oyster seed grounds, including but not limited to the area east of the red line described by the department regulations which separates the area available for leasing from the state oyster seed grounds east of the Mississippi River; on any future oyster seed ground area designated west of the river; on oyster seed ground reservations; and on Calcasieu Lake."
[18] Specifically, defendants state that "[o]ver a year after the businessmen were no longer affiliated with the company who was attempting to recapitalize the `facility,' the State conducted a search and discovered drums of what was allegedly hazardous waste."
[19] At issue in Legendre was whether a dangerous weapon could encompass "Concrete on Parking Lot."
[20] See State v. Atkins, 248 La. 776, 181 So.2d 779, (1966) wherein the defendant attached to his motion to quash for bigamy prosecution a certified copy of a judgment of divorce granted by a California court, retroactive to the date of filing, showing he had been divorced from his first wife before re-marrying in Louisiana. The court limited the holding to the facts of that case.
[1] Compare La.R.S. 30:1137(G)(2) which provides criminal sanctions where a "person who knowingly transports, treats, stores, disposes of or exports any substance ..." when there is a threat of bodily harm. In the present case, there has been no charge of bodily harm.