JgGUIDRY, J.
The defendant, Hulen Martin, was charged by grand jury indictment with one count of aggravated rape of a juvenile, a violation of La.R .S. 14:42(A)(4). He pled not guilty. Following a jury trial, he was found guilty as charged. He was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. He now appeals, designating thirty-eight assignments of error.
FACTS
The victim, born on November 24, 1985, testified at trial as follows. Her mother was married to the defendant, whom she knew as “Bubbie.” She lived with her mother and the defendant from the time she was five years old. However, she no longer lived with her mother and the defendant because she “got raped” by the defendant in Prairieville. She broke down in tears while testifying that when she and the defendant were driving to Piggly Wiggly, the defendant parked the car in a neighborhood, pulled her panties to the side, and told her to “sit on his lap.” She identified the “private” on an anatomically correct male doll, and testified that she had seen the defendant’s private when he raped her in the car and at her house. Subsequently, she testified that she had felt the ■ defendant’s “privates” on her “butt” in the car.
On cross-examination, the victim testified that during the incident in the car, the defendant “took out his private” and put it on her private. She was not sure if the defendant had ever put his private inside of her.
In regard to the incident at her house, the victim testified that when she was supposed to take a bath, the defendant took her into her mother’s bedroom, told her to take her suit off, told her to come lay in the bed, got on top of her, and touched her “private” with his “private.” When she told the defendant to stop, he told her to “shut pup.” The defendant also threatened to hurt her, her mother, and her brother if she told anyone.
ATTORNEY GENERAL
In assignment of error number 5, the defendant contends the trial court erred in denying his motion to dismiss the prosecution on grounds that the record contained no written request from the District Attorney, nor any order of the district court authorizing the Attorney General to prosecute him. He relies upon La. Const, art. IV, § 8 and State v. Neyrey, 341 So.2d 319 (La.1976).
As trial was about to begin, the defendant moved to dismiss the prosecution as illegal pursuant to La. Const, art. IV, § 8 and State v. Neyrey because of the absence of evidence that the Attorney General had been requested to conduct the prosecution by the District Attorney. The State responded that Neyrey was distinguishable as the instant case involved a request for assistance rather than a recu-sal by the District Attorney. The State pointed out that the District Attorney’s office had presented the matter to the grand jury and obtained the indictment. The State expressed its belief that a written request was of record, but if such a request was not of record, it would supplement the record with a written request. Lastly, the State argued the defendant suffered no prejudice from the Attorney General’s office handling the matter and had failed to object before then. A written request for assistance from the District Attorney to the Attorney General was not of record, and the record was never supplemented with a written request.
Initially, we note that a “motion to dismiss” was the wrong procedural mechanism by which to raise the issue below. The defendant should have raised the issue in a motion to quash. A motion to quash is, essentially, a mechanism whereby pre-trial pleas are urged, i.e., pleas which do not go to the merits of the charge. State v. Byrd, 96-2302, p. 18 *8 (La.3/13/98), 708 So.2d 401, 411, cert. denied, Peltier v. Louisiana, 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998). See also La.C.Cr.P. arts. 532, 533. A motion to quash must be in writing. La.C.Cr.P. art. 536.
In any event, we find no error in the participation of the attorney general in this prosecution. As a general rule, “[t]he plain meaning of legislation should be conclusive, except in the ‘rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters’ [in which case] the intention of the drafters, rather than the strict language controls.” State v. Ste. Marie, 98-1167, pp. 2-3, (La.12/18/98), 723 So.2d 407, 409, (citing, United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 243, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)).
La. Const, art. IV, § 8 provides, in pertinent part:
As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; (2) upon the written request of a district attorney, to advise and assist in the prosecution of any criminal case; and (3) for cause, when authorized by the court which would have original jurisdiction and subject to judicial review, (a) to institute, prosecute, or intervene in any criminal action or proceeding, or (b) to supersede any attorney representing the state in any civil or criminal action.
State v. Neyrey, 341 So.2d 319 (La.1976) (on rehearing) involved a situation where a District Attorney had turned over the investigation and prosecution of a matter to the Attorney General by letter. The Supreme Court addressed whether La. Const, art. IV, § 8 required the Attorney General to institute prosecution only with judicial authorization for cause, rather than with a District Attorney’s written consent. In deciding that judicial authorization for cause was not required, the court expressed the following:
After reviewing the transcript of the constitutional convention proceedings wherein the adoption of article 4, section 8 was discussed, we do not think that defendant’s narrow interpretation of article 4, section 8(2) is consistent with the intent of our constitution’s drafters. The purpose of the enactment of article 4, section 8, as the transcript of the constitutional convention proceedings reveal, was the curtailment of the attorney general’s theretofore untrammeled authority to institute, ^prosecute, or intervene in a criminal case. The drafters, in enacting the provision, did not mean to hinder cooperative efforts between a district attorney and our state’s chief legal officer, and in fact article 4, section 8(2) implicitly endorses such efforts.
Neyrey, 341 So.2d at 324 (emphasis supplied) (footnote omitted).
The instant 'case involved exactly the kind of “cooperative efforts between a district attorney and our state’s chief legal officer” that La. Const, art. IV, § 8 was enacted to effectuate. While the record does not contain a written invitation into the case from the District Attorney to the Attorney General, it is abundantly clear that the Assistant Attorneys General who participated in this matter did so with the full consent and assistance of the District Attorney. The District Attorney obtained the indictment in this matter before the Assistant Attorneys General began any participation in the case, and he sought and obtained payment of an expert witness fee approximately two months after the defendant was convicted. Further, not only did the defendant not object to the involvement of the Assistant Attorneys General in this matter until the morning of trial, as the matter approached trial, he also requested service of nine of his pleadings on both the District Attorney and Assistant Attorney General Brindisi, and one of his pleadings on the District Attor *9 ney and the Attorney General. This assignment of error lacks merit.

LA.R.S. 15:171

In assignment of error number 1, the defendant contends the trial court erred in entertaining his prosecution after the lapse of six months from his arraignment in violation of La.R.S. 15:171.
La.R.S. 15:171 was effective between August 15, 1993, and July 8, 1997. See 1993 LaActs No. 531, § 1; 1997 LaActs No. 713, § 1. The provision provided for the expeditious disposition of certain offenses (including aggravated rape) involving abuse of a child, or unlawful sexual contact, or acts performed in the presence of, with, or upon a child under the age of' seventeen. See former La.R.S. 1 fi15:171(A) & (B). La.R.S. 15:171(C), in pertinent part, provided, “However, notwithstanding any provisions of this Subsection, the trial shall commence within six months after arraignment.”
In the instant case, the defendant was arraigned on January 11, 1993, and was tried beginning on November 18, 1993.
The Louisiana Supreme Court has held that La.R.S. 15:171 did not establish a six-month limit on trials which could inure to the benefit of a defendant facing prosecution of a sex offense involving a child. State v. Ste. Marie, 98-1167 (La.12/18/98), 723 So.2d 407. Accordingly, we need not, and do not, address the effect, if any, of La.R.S. 15:171 to cases, such as the instant case, where the defendant had been arraigned prior to the effective date of the provision. This assignment of error is without merit.

SANITY COMMISSION

In assignment of error number 3, the defendant contends the trial court erred in conducting a hearing on his application for appointment of a sanity commission on the same morning it was filed. He argues the court erred in failing to allow him an opportunity to obtain records and expert testimony and erred in failing to appoint any expert to examine him before the hearing. He further argues the testimony offered into evidence at the hearing on the application, taken as a whole, established a reasonable ground for appointment of a sanity commission.
On November 17, 1993, the defendant filed an application for appointment of a sanity commission to examine him. The motion stated that the defense desired the determination of whether the defendant presently had the mental capacity to understand the proceedings against him and to assist in his defense, and if not, whether the incapacity was because of mental disease or defect. The motion alleged the defendant: had no recollection of sexually assaulting any person; had steadfastly maintained his innocence of the charge; did not appear capable of understanding the 17proceedings against him; did not appreciate the State’s evidence which indicated that he may in fact have committed one or more sexual offenses; was very nervous and had difficulty relating information objectively.
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. La.C.Cr.P. art. 641. The appointment of a sanity commission is not a perfunctory matter or a ministerial duty of the trial court, nor is it guaranteed to every accused in every case. The fact that the defendants’ capacity to proceed is called into question does not, for that reason alone, require the trial court to order a mental examination of the defendant; rather, it must have reasonable grounds to doubt the defendant’s capacity. La. C.Cr.P. art. 643. The ordering of a sanity commission to inquire into the defendant’s present capacity to proceed rests in the sound discretion of the trial court. State v. Robinson, 92-1057, pp. 2-3 (La.App. 1st Cir.5/5/95), 655 So.2d 517, 519.
*10 In the instant case, the minutes of November 17, 1993, reflect that the trial court did not immediately rule upon the defendant’s motion on the basis of whether or not there were reasonable grounds to doubt the defendant’s capacity. Rather, the court held a hearing and listened to testimony from multiple State and defense witnesses before ruling that the defendant had the capacity to proceed and denying the motion for appointment of a sanity commission. However, the court failed to record the hearing. The minutes of November 17, 1993, do not reveal if the hearing was held because the court was unable to rule upon the motion without more information, but following the hearing the court did indeed rule on the motion. If the court had a reasonable doubt concerning the defendant’s capacity, the proper procedure was to order a mental examination of the defendant, rather than decide the issue on the basis of testimony and argument. La.C.Cr.P. art. 643. Because the hearing is unavailable for review, we cannot decide the instant assignment of error. | ^However, even if the instant assignment were to have merit, the only relief that the defendant would be entitled to would be the appointment of a sanity commission.
Accordingly, we remand this case to the trial court for a mental examination of the defendant in accordance with La.C.Cr.P. art. 643 et seq. In accordance with La. C.Cr.P. art. 647, once the sanity commission has issued its report(s), the trial court shall determine in a contradictory hearing whether or not the defendant had the necessary mental capacity to proceed to trial. We note that almost six years have passed since the instant trial. Therefore, if the trial court is unable to make a determination regarding the defendant’s mental capacity to proceed to trial, or if it determines that the defendant lacked the necessary mental capacity to proceed to trial, it hereby is ordered to vacate the defendant’s conviction and sentence and grant him a new trial. Of course, prior to any such retrial, a new determination of the defendant’s mental capacity to proceed would be appropriate. However, if the trial court determines that the defendant had the necessary mental capacity to proceed to trial, the defendant may appeal anew within five days of such adverse ruling. See State v. Robinson, 92-1057, at pp. 3-4, 655 So.2d at 519; State v. Philson, 558 So.2d 555 (La.1990); compare, State v. Carr, 629 So.2d 378 (La.1993), writ denied, 94-0670 (La.4/4/94), 635 So.2d 1116.
Our resolution of the instant assignment of error causes us to pretermit discussion of the remaining assignments of error because they concern matters which may become moot after remand of this matter.
CONVICTION AND SENTENCE VACATED; REMANDED WITH INSTRUCTIONS.