JgFITZSIMMONS, J.
Randall Corbett and Heather Smith have been indicted with second degree murder of Marsha A. Fisher, a violation of La. R.S. 14:30.1(A)(3), and with possession with intent to distribute a Schedule I controlled dangerous substance, 3,4-methylen-edioxymethamphetamine (MDMA/Ecsta-sy), a violation of La. R.S. 40:966(A)(1). See La. R.S. 40:964, Schedule I, (C)(23). The statutory basis for the second degree murder prosecution is La. R.S. 14:30.1(A)(3), which applies to the killing of a human being “[wjhen the offender unlawfully distributes or dispenses a controlled dangerous substance listed in Schedules I or II of the Uniform Controlled Dangerous Substances Law which is the direct cause of the death of the recipient who ingested or consumed the controlled dangerous substance.” (Footnote omitted) Fisher died after ingesting ecstasy tablets purchased by Smith with money provided by Corbett. The state filed a motion to sever the co-defendants for trial. The trial court granted the motion.
Corbett filed a motion to quash in which he argued the state failed to charge an offense punishable under a valid statute. Although the allegations of the motion focus on the charge of second degree murder, the motion sought dismissal of the entire indictment. Corbett maintained the applicable portion of the second degree murder statute was designed to punish the actual distributor of the drugs: in this case, the man who sold the ecstasy to Smith. Corbett alleged that because he only provided funds for Smith to purchase the drugs, the prosecution against him should be quashed.
The trial court determined Corbett was a “purchaser,” not a distributor, and it granted Corbett’s motion to quash. Later, the court clarified its ruling, explaining that the conduct described in the state’s responses to the request for a bill of particulars was not punishable by either the second degree murder statute, La. R.S. 14:30.1(A)(3), or the possession with intent *153 to distribute statute, La. R.S. 1 ,S40:966(A)(1). The court released Corbett from his bail responsibility. In this appeal, the state seeks review of the ruling granting the motion to quash.
At a separate proceeding, Heather Smith adopted Corbett’s motion to quash, and she argued the charges against her should also be quashed because she was merely an intermediary between the seller and the people who used the drugs. The trial court denied Smith’s adoption of Cor-bett’s motion. The court noted that Cor-bett provided the money for the drugs, but Smith actually provided Fisher with the drugs. In a writ application (2003 KW 1556), Smith has sought review of that ruling.
La. Const, art. I, § 13 requires the state to inform the accused in a criminal prosecution of the nature and cause of the accusation. The indictment should be a “plain, concise, and definite written statement of the essential facts constituting the offense charged.” La.Code Crim. P. art. 464. The state may provide information concerning the nature of the offense in the indictment alone, or in its responses to a defense request for a bill of particulars. See La.Code Crim. P. art. 484. The purpose of the bill of particulars is to inform the accused more fully of the nature and scope of the charge against him so he will be able to defend himself properly and to avoid any possibility of being charged again with the same criminal conduct. State v. DeJesus, 1994-0261 (La.9/16/94), 642 So.2d 854, 855 (per curiam).
A motion to quash may be based on the grounds that “[t]he indictment fails to charge an offense which is punishable under a valid statute” or that a bill of particulars has shown a ground for quashing the indictment under La.Code Crim. P. art. 485. La.Code Crim. P. art. 532(1) & (5). If it appears from the bill of particulars furnished under article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the | indictment, “the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured.” La.Code Crim. P. art. 485. The court may also order an indictment quashed if it appears that the conduct alleged against the defendant does not provide a legál basis for the offense charged. “The state may not ‘base an indictment for a serious offense ... upon an allegation of fact which cannot conceivably satisfy an essential element of the crime, and compel the accused to withstand the rigors of a jury trial with no expectation that a conviction can be supported by such an allegation.’ ” State v. DeJesus, 642 So.2d at 855 (quoting State v. Legendre, 362 So.2d 570, 571 (La.1978)).
A motion to quash asserts pretrial pleas: pleas that do not go to the merits of the charge. At a hearing on such a motion, evidence is limited to procedural matters. The question of factual guilt or innocence is not before the court. State v. Byrd, 1996-2302, p. 18 (La.3/13/98), 708 So.2d 401, 411, cert. denied, Peltier v. Louisiana, 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998). The trial court, in considering a motion to quash the indictment, must construe those facts set out in the bill of particulars to be true and determine whether or not, if proved, they constitute the crime charged. State v. Odom, 2002-2698, p. 7 (La.App. 1st Cir.6/27/03), 861 So.2d 187, 192, writ denied, 2003-2142 (La.10/17/03), 855 So.2d 765. While evidence may be adduced, such may not include a defense on the merits. State v. Byrd, 1996-2302 at pp. 18-19, 708 So.2d at 411. A trial court’s ruling on a motion to *154 quash is reviewed for abuse of discretion. State v. Odom, 2002-2698 at p. 6, 861 So.2d at 191.
In a motion for bill of particulars, Cor-bett asked the state to describe the manner in which Corbett distributed or dispensed a controlled dangerous substance to the victim. In response, the state defined the law on principals and alleged IsCorbett distributed the substance by delivering it to the victim, “whether by physical delivery, administering, or subterfuge.”
The state also referred to “offense” reports and the taped statements of Corbett, Smith, and T.J. Wilson.[1] According to the police reports, by the time officers with the Baton Rouge Police Department were notified at 7:49 a.m. on August 25, 2001, Marsha Fisher had been dead for some time. Corbett was at the residence when the police arrived. He was obviously under the influence of a narcotic. Corbett told an officer that he and Fisher had taken ecstasy on the previous evening. At some point, Fisher told Corbett she was feeling badly. She then went to bed. Corbett claimed he fell asleep on the couch and was awakened when Heather Smith and T.J. Wilson knocked on the door at about 7:30 a.m. Corbett said he then discovered Fisher dead in the back bedroom. In his initial statement, Corbett denied any knowledge of where Fisher purchased the ecstasy. Corbett told the officers that, before the police arrived, Smith had removed the narcotics and paraphernalia that had been in the residence.
Corbett also gave a taped statement to the police, and that statement was different from his initial statement. He said Fisher had been smoking crystal methamphetamine throughout the day. He admitted cashing his paycheck and providing money for Smith to buy the ecstasy; after Smith and Wilson returned with the ecstasy, he and Fisher began doing ecstasy. After taking the ecstasy, Corbett noticed that various people came and went from the apartment. He ^remembered three men coming to the apartment and one of them going into the bedroom alone with Fisher. After a period of time, Corbett went into the bedroom to check on Fisher. He found Fisher on her back and the man staring at her. Corbett could tell Fisher was heavily under the influence of ecstasy. In an attempt to revive her, he put her in the shower. When this had no effect, he put her in the bed. She was “rolling hard,” experiencing the side effects of taking ecstasy. After a period of time, she stopped moving and Corbett thought she was asleep. He thought she would wake up fine, but some time later he felt her body turn cold. He rolled her over and could tell she was dead. He said he did not know what to do and was too scared to call for medical assistance. Smith and Wilson were not present when Fisher died. Although they returned to the residence *155 after she died, they left before emergency personnel arrived.
Heather Smith gave a statement to the police in which she said Fisher was her best friend. Smith and Fisher often used drugs together, smoking crystal methamphetamine and marijuana on an almost daily basis. The two also ate and snorted crystal methamphetamine. Smith said Fisher also took pain pills and downers, such as Somas and Valium. Smith said she and Fisher had wanted to do ecstasy on the afternoon of August 24, and Smith had met a man who would sell her some tablets. Corbett gave Smith $255 to buy 15 tablets of ecstasy, and Smith called the man to make arrangements. Smith and T.J. Wilson then met the man at an arranged location to make the purchase, and they returned to Fisher’s residence with the ecstasy. Smith said she and Wilson each took a pill. Smith gave the remainder to Fisher and Corbett. Smith and Wilson then left the residence and spent the night elsewhere. When they returned at 7:30 a.m., they discovered that Fisher was dead. In the state’s response to the bill of particulars, the state quotes from a portion of Smith’s statement. When asked if she remembered how many pills she or Fisher took, Smith replied, ‘Well, I know Randall [Corbett] told me she |7he [sic] gave her two pills, now I wasn’t there to see it. I took probably four or five.”
T.J. Wilson also gave a statement to the police. He said that initially Fisher gave him and Heather Smith a check for $255 to use for the drug purchase, but he and Smith were unable to cash that check. Corbett then left to cash a check. When Corbett returned, he gave Smith money to use for the purchase. Wilson told the police that when he and Smith returned to the residence with the ecstasy they remained for about 15 minutes. During that time, Corbett and Fisher consumed some ecstasy tablets. According to Wilson’s account, Smith notified him at 3:30 a.m. that Fisher was dead. He and Smith had difficulty convincing Corbett to call the authorities. In the state’s response to the bill of particulars, the state quotes from a portion of Wilson’s statement. According to Wilson, when he and Smith returned to Fisher’s residence with the ecstasy, Corbett attempted to wake up Fisher so that she could take the ecstasy.
A relative of Fisher told police that Fisher had been taking numerous types of drugs for a long period of time: Fisher smoked crystal methamphetamine on an almost daily basis, and took ecstasy, Za-nax, Zanabar, Somas, and GHB (known as the “date rape drug”).
To determine if the trial court’s ruling on the motion to quash was correct, this court must determine if the conduct alleged against Corbett, in the state’s responses to the bill of particulars, provides a legal basis for the charged offenses. The pertinent portion of the second degree murder statute is as follows:
A. Second degree murder is the killing of a human being:
❖ * :fs
(3) When the offender unlawfully distributes or dispenses a controlled dangerous substance listed in Schedules I or II of the Uniform Controlled Dangerous Substances Law which is the direct cause of the death of the recipient who ingested or consumed the controlled dangerous substance.
|sLa. R.S. 14:30.1 (as amended by 1987 La. Acts No. 465, § 1) (footnote omitted). However, there is no statutory definition for “distributes” or “dispenses” in title 14.
In an attempt to provide definitions, Corbett, at one of the hearings held on the motion to quash, introduced minutes of a *156 Senate Judiciary Committee meeting. During the meeting, one of the senators described Senate Bill 191 of 1987 as providing that, if a person “sells” a drug that results in the death of the buyer, the “seller” could be charged with second degree murder. In discussing the addition of subsections (A)(3) and (A)(4) to the second degree murder statute, Professor Cheney Joseph said, “The statute covers both the ‘street dealer’ who distributes directly to the ‘consumer’ [an apparent reference to La. R.S. 14:30.1(A)(3) ], as well as the ‘wholesaler’ who transmits the drugs to a ‘street dealer’ [an apparent reference to La. R.S. 14:30.1(A)(4) ] who distributes them to the ‘consumer’ who takes the drugs and dies as a ‘direct cause’ of the ingestion.” Cheney C. Joseph, Jr., Criminal Procedure, Developments in the Law, 1986-1987, 48 La. L.Rev. 257, 284 (1987). See also Cheney C. Joseph, Jr. & P. Raymond Lamonica, Criminal Jury Instructions § 10.30.1(A)(3),(4) in 17 Louisiana Civil Law Treatise (2003).
Under La. R.S. 40:966(A)(1), it is unlawful for any person to knowingly or intentionally possess MDMA, a Schedule I controlled dangerous substance, with the intent to distribute. For purposes of the Uniform Controlled Dangerous Substances Law, La. R.S. 40:961 to 40:995, “distribute” is defined as “to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner.” La. R.S. 40:961(14). “Dispense” is defined as “to deliver a controlled dangerous substance to the ultimate user or human research subject by or pursuant to the lawful order of a practitioner, including the packaging, labeling, or compounding 1 (¡necessary to prepare the substance for such delivery.” La. R.S. 40:961(13). “Deliver” and “delivery” are defined as “the transfer of a controlled dangerous substance whether or not there exists an agency relationship.” La. R.S. 40:961(10).
The case law has defined “deliver” as transferring possession or control. The transfer of possession or control, i.e., distribution, is not limited to an actual physical transfer between the culpable parties, but may be accomplished by the imposition of a third party. State v. Parker, 536 So.2d 459, 463 (La.App. 1st Cir.1988), writ denied, 584 So.2d 670 (La.1991).
A defendant may be guilty as a principal in the crime of distribution if he aids and abets in the distribution or directly or indirectly counsels or procures another to distribute a controlled dangerous substance. See La. R.S. 14:24. Although “[i]t is not necessary to ‘sell’ contraband to aid and abet its distribution,” a “distributor” must do more than merely receive the controlled substance as a user. State v. Celestine, 1995-1393, p. 3 (La.1/26/96), 671 So.2d 896, 897 (per curiam)(and cases cited therein).
The facts provided by the state in the bill of particulars[2] do not support the essential element of distribution for the second degree murder charge, or the possession with intent to distribute charge. Although Corbett provided the money, the facts show that Fisher was a joint participant in the transaction. A person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. State v. Hamil *157 ton, 2002-1344, p. 11 (La.App. 1st Cir.2/14/03), 845 So.2d 383, 392. Corbett, Smith, Fisher, and Wilson jointly purchased and jointly used the ecstasy tablets. These allegations do not support a finding that Corbett’s actions went beyond those of a mere purchaser and |10consumer. Corbett did not sell, intend to sell, share in the proceeds of the sale, make any profit, or provide any assistance to the unidentified street dealer who sold the tablets to Smith for use by the group.
Accordingly, we find no error in the court’s ruling and the granting of Corbett’s motion to quash is affirmed.
GRANT OF MOTION TO QUASH AFFIRMED.
GAIDRY, J., concurs.

. The taped statement of Corbett was introduced as an exhibit at a hearing held on Corbett's motion to suppress, and it was included in the appeal record. The taped statements of Smith and Wilson were not included in the appeal record. Those statements are summarized in the police reports, and the state quoted portions of those statements in the state’s response to the bill of particulars. Neither side has objected to the absence of those statements in the appeal record. We further notice that, at the initial hearing held on the motion to quash, the state asked the court to consider testimony introduced at the hearing held on Corbett's motion to suppress and the state's motion to sever. No testimony was introduced at the motion to sever, but testimony was introduced at the motion to suppress hearing. In any event, these transcripts are not pertinent for consideration of a motion to quash, wherein the court is limited to reviewing the indictment and the answers to the bill of particulars.

. In its appeal, the state argues that the trial court erred by making factual findings in its consideration of the motion to quash. Rather than making any factual findings, the trial court accepted as true the information provided by the state in its answer, and supplemental answer, to Corbett's motion for a bill of particulars.